STELZ v. SCHRECK et al.

*(Supreme Court, Special Term, New York County. June, 1890.)*

DIVORCE—PROPERTY RIGHTS—TENANCY BY ENTIRETY—TENANCY IN COMMON.

Where husband and wife are seised of a tract of land by the entirety, and a divorce *a vinculo* is granted on the ground of the wife's adultery, they are thereafter seised as tenants in common.

*G. H. Kracht,* for plaintiff.   *L. S. Goebel,* for defendant.

PATTERSON, J.   On April 28, 1886, certain lands and premises were conveyed to William Stelz and Minnie Stelz, his wife, and by force of the deed the grantees became seised as tenants by the entirety.   On June 20, 1888, by decree of the supreme court of the state of New York, the marriage of the parties who were the grantees in that deed was dissolved, and an absolute divorce was allowed the husband, on the ground of the adultery of the wife. On October 18, 1888, William Stelz married the plaintiff, and on the 8th day of February, 1889, he died, leaving the plaintiff his widow.   His former wife (the defendant Minnie Schreck) also survived him.   During his 'life-time, she married one Schreck.   The plaintiff now sues claiming dower in all the land and premises, and asking that such dower be admeasured, and for the ordinary decree in such cases.   She contends that, by the judgment of divorce and the dissolution of the marriage between her husband and his first wife, for the adultery of the first wife, all estate and interest of that first wife in the premises ceased, and was forever ended.   The first wife claims the whole premises under the grant, notwithstanding the severance of the marital relation.   On behalf of certain infant devisees under the will of Stelz, it is claimed that the decree of divorce operated to sever the estate, and that Stelz and the defendant Minnie Schreck were thenceforward seised as tenants in common, and that the plaintiff's right is limited to dower in a moiety only of the land and premises.

It was at one time quite generally supposed, and it was decided by the general term of the supreme court in the second department, (*Feely v. Buckley,* 28 Hun, 451; see, also, *Meeker* v. *Wright,* 76 N. Y. 262,) that since the passage of the act, (chapter 90 of the Laws of 1860,) a conveyance of real estate to husband and wife, without qualifying terms, vested the property in them as tenants in common, and that they did not take an estate in entirety; but that view was expressly overruled in *Bertles* v. *Nunan,* 92 N. Y. 152, and the decision in that case was reaffirmed in *Zorntlein* v. *Bram,* 100 N. Y. 13, 2 N. E. Rep. 388.   It must be regarded as the settled law of this state that by a conveyance such as that in this case the grantees become seised *per tout,* and not *per tout et per my.*   That which vested in them under and by the deed was an estate by the entirety, with the incidents pertaining to that estate at common law, the principal characteristic of which was that the entire ownership passed to the surviving husband or wife.   The question now before the court is, what becomes of the estate and the title when the marriage relation is dissolved, not by death, but by a decree of a court of competent jurisdiction granting a divorce *a vinculo* between parties seised of an estate by the entirety?   The tenure by which the parties held was purely one of the common law, founded altogether upon the identity of the husband and wife as one legal person, and therein consisted the difference between that estate and a joint tenancy.   *McCurdy* v. *Canning,* 64 Pa. St. 39.   The grantees did not, and could not, take by moieties, because of their marriage relation and their legal unity and identity, and partition could not be made, although that may now be done in New York, under chapter 472 of the Laws of 1880.   The effect of that statute is not to change the legal character of the estate unless the parties make partition according to its terms.   As the estate in its creation under the form of the deed, as affected by the relation of the

grantees to each other, by which relation their interests in the subject of the grant were controlled, arose out of the existence of a marriage between them, so the continuance of that estate depended on the maintenance of that relation, for the whole estate would vest absolutely in a surviving husband or wife. If that relation ceased during the life-time of both parties, the principal element of the estate ceased, namely, that of ownership of husband or wife as such. But the dissolution of the marriage did not necessarily destroy all property right of the one against whom the decree was pronounced, for there is no condition fairly to be implied as annexed to the estate that infidelity to the marriage vow, even when a divorce is judicially ordered, shall have that effect, and determine the whole interest of the guilty party in the grant. No such feature is mentioned in the books as annexed to the estate, and there is no authority in the courts to resort to equitable considerations to add incidents to common-law tenures not known or declared to belong to them by the common law itself, or not necessarily connected with them, nor to apply the supposed analogy of statutes even as ancient as that of Westminster II., taking away dower in certain cases from an adulterous wife.

The question now presented has received consideration from text-writers, (2 Bish. Mar. & Div. § 716; Freem. Co-ten. § 76,) and it is stated by them that the effect of an absolute divorce on an estate in entirety is to convert that estate into one of tenancy in common. Both these judicious writers seem to base their statement of the law on this subject on what was decided in *Ames* v. *Norman*, 4 Sneed, 696. In that case the court says: "If the rights of husband and wife, in relation to an estate held by entireties, are not altered by the decree declaring the divorce, what becomes of the joint estate? What are their respective rights in the future in regard to it? They are no longer one legal person. The law itself has made them twain. They are no longer capable of holding by entireties. The relation upon which that tenancy depended has been destroyed. The one legal person has been resolved by judgment of law into two distinct individual persons, having in the future no relation to each other, and with this change of their relations must necessarily follow a corresponding change of the tenancy dependent upon the previous relation. As they cannot longer hold by a joint seisin, they must hold by moieties. The law, by destroying the unity of persons between them, has by necessary consequence destroyed the unity of seisin in respect to their joint estate, for, independent of their matrimonial union, this tenancy cannot exist." In *Lash* v. *Lash*, 58 Ind. 528, it is said: "Tenancy by entireties originated in the marital relation, founded on the idea of the unity of husband and wife, rendering them but one person in law. The continuance of such tenancy in a given case depended upon the continuance of the marital unity. The dissolution of that unity before death, whereby two actual persons were restored to their natural severalty, operated to divide the title to the estate held by them while husband and wife by entireties equally between them, making them tenants in common thereof. When there was nothing in the deed of conveyance controlling the matter, the effect of the divorce was to simultaneously destroy the tenancy by entireties." To the same effect is also *Harrer* v. *Wallner*, 80 Ill. 197. The doctrine announced by the text-writers and in the cases referred to is applicable to this cause. The question does not seem to have arisen in this state, nor can I find any case of authority at variance with those cited. The plaintiff is entitled to dower in one-half the premises, and to the interlocutory decree or order of reference usual under the Code of Civil Procedure in like cases.